v. United States. Please proceed Mr. Borowitz. May it please the court. The issue of standing in a bid protest depends on whether the plaintiff is an interested party. The Court of Federal Claims erred by imposing an additional standing test on Cleveland Assets in dismissing its claim that the request for lease proposals exceeded the congressional authorization on the grounds that Cleveland Assets is not within the zone of interest protected by 40 U.S.C. 3307. This ruling runs directly contrary to the decision of this court in the CACI case in 1983, where the government raised the same zone of interest argument in a bid protest saying well the particular violation... Sure, but that was a breach of contract case. You don't have to show zone of interest for breach of contract. You show it for statutory violation cases. CACI was a breach of contract case, Your Honor, but the other federal circuits that were doing scandal bid protests promptly adopted the reasoning of CACI with respect to scandal. But that doesn't make sense. When the claim is directed to a statutory provision, it could be a different rule that applies. Of course zone of interest isn't going to apply to a contractual obligation. Well, in the National Maritime Union case, the D.C. Circuit said that the zone of interest in prudential standing is resolved by a bidder's right to have a legally valid procurement process. Let me ask you this, because a lot of those D.C. Circuit cases seem to rely on a much more permissive standing doctrine that's certainly been, I think, at least not explicitly overruled and abrogated by more recent modern Supreme Court standing doctrine. If this statute we have today were enacted and we don't have the history of Scanwell and CACI and all the confusion between where and when and how you can file protests, but this was the first time you could file a bid protest in the Court of Federal Claims based upon the authorization in B-1, which says exactly what it says, would the modern Supreme Court standing precedent require application of a zone of interest rule? Well, let me take that head on, Your Honor. The two most recent Supreme Court decisions dealing with zone of interest are the Lexmark case and then last year the Bank of America case. In both of those cases, the Supreme Court said that the issue of prudential standing is perhaps a bit of a misnomer, but that the key issue is whether a plaintiff comes, whether a plaintiff is within the zone of interest depends on whether a legislatively conferred cause of action encompasses the particular plaintiff's claim. That's the harlot. Let's apply that test to 3307. No, but that's the mistake there, is that the conference of the claim is 28 U.S.C. 1491, not 40 U.S.C. 3307. Wait, are you saying that 1491B creates a cause of action? It provides jurisdiction and it is also... No, that's not the same thing. It does both, Your Honor. I thought that the Supreme Court and our court had been very clear that all that 1491B does is provide jurisdiction. They've also... That's certainly true for the Tucker Act in general, isn't it? It may be for the Tucker Act in general, but if we look at standing, this court's precedence starting with... I'm not asking, this is it. Stick with my hypothetical. I'm not looking at past precedent on how we've interpreted the interplay between Scanwell and implied contract theory. I'm looking at this. They enact this specific statute authorizing claims to be filed here jurisdictionally. You still have to have some other cause of action. No, you don't, Your Honor. That's why the court has said in the... Let me add one more since you seem to be disputing this, although I don't know why. Let me add one more piece to my hypothetical. The Supreme Court has explicitly said 1491 is not a cause of action. It is only a jurisdictional statute. We have to look elsewhere to the cause of action. In this case, the cause of action would be a right to sue under 3307 for violation of that statute. I don't agree with that, Your Honor. I know you don't agree with that, but that's part of my hypothetical. You cannot rely on 1491B for a cause of action. The only other place to look is 3307. Do you think that 3307 gives you an implied right to sue for violation of that statute? In other words, are you in the zone of interest for 3307? The Court of Federal Claims in the Springfield parcel case upheld exactly that claim. Upheld exactly what claim? A claim based on 40 U.S.C. 3307. Yes, but didn't they do it based upon ... Look, I'm trying to get past all this convoluted what I think you are relying on is legislative history and the like to freeze a certain outdated standing doctrine. I'm trying to look at this. If we were looking at this de novo, without all that complicated history, would we be required under Supreme Court precedent to look at 3307 and determine whether you are within the zone of interest to sue under that statute? I don't think so, because what the court has done and is doing, starting with the AFGE decision and coming forward since then, and these are all under what you would call the modern Supreme Court standing decisions, is looking to the language and deciding standing on bid protest, this court has said the key to that is the language of 1491B itself, which requires you to be an interested party. But that's determining what interested party is. In none of those cases, at least I haven't seen any of those cases, was there any dispute over whether the underlying statute or regulation was one that the protester would fall within the zone of interest. They're almost all typically the regular run of protest statutes we see, either SICA or conflict of interest statutes for procurements or the like. So there's never been a case like this, at least as I can see, where there's any substantial question of whether the statute at issue was enacted to protect protester rights. Your Honor, as I say, the Springfield parcel case is directly on point. But that's not our case. No, it is not. And it doesn't rely on, it relies on CACI, doesn't it? The what? The Springfield parcel case? No, it doesn't. What does it rely on? It relies on, it addresses standing by doing the interested party analysis and then moving on and talking about whether the protester had a cause of action based on a violation of 40-3307. And it found it did because the procurement in that case exceeded, the space procured in that case exceeded what had been authorized by Congress in the prospectus. I'm struggling to just understand this standing and how your client is within the zone of interest. When you look at the statute, this was not a statute adopted to protect the procurement process or to protect bidders. This is nothing more than a tug of war between the legislature and the executive over the purse. We need to authorize any payments more than $3 million. My husband and I have the same rule. We got married. We set an amount. You can spend any, and you can buy anything you want as long as it's under a certain amount. If it's over that amount, you got to check it with me first and vice versa. It seems to me that that's a decision between the executive and the legislature and it quite frankly has absolutely nothing to do with protecting the bidders and individual procurement. That may be, Your Honor, but the point of bid protests, the whole point of bid protests and the history, I'm sorry, Your Honor, I disagree, the history is critical to this is that Congress, and it did the same when it enacted the Administrative Dispute Resolution Act in 1996. The established law, which Congress carried forward was that you have as a bidder a right to a legally valid procurement process. And if you are an interested party, you can say, I didn't get the process because of a violation even though without regard to whether the regulation or the law that you say was specifically passed for your benefit. And what's your support for that in the legislative history? What's your support specifically? Because I think this would be a very unusual decision for us to say that Congress intended to freeze in place an outmoded view and a very liberal view of standing when the Supreme Court in the decades since those decisions has made a much narrower view of standing. Well, standing, of course, deals with a plethora of cases. Bid protests are a narrow category of cases. We're talking about... Right. That's why I'm asking, where's your support in the legislative history? It's cited in our brief, Your Honor. What does it say? Because all I can see is various kind of vague references to where telling the Court of Federal Claims to apply Scanwell, and we don't intend to change the rules about the Scanwell cause of action. I think that that's correct, Your Honor. That's a fair description of what the legislative history said, which is Congress said, we want the courts to continue doing what they've been doing under Scanwell, only we're now going to enable the Court of Federal Claims to start doing it. And ultimately, in several years, the Court of Federal Claims will become the only court that does it. So let me ask you again, hypothetically, instead of going to the Court of Federal Claims to resolve this split, they had decided, we're just going to keep these all APA cases. These are all APA cases going forward in the district courts under Scanwell, and we don't mean to change the law otherwise. Subsequently, the Supreme Court has clearly modified standing requirements under the APA. Would that legislative history saying, we intend to keep the Scanwell doctrine in place, be enough to freeze that version of standing, even despite recent Supreme Court reinterpretations of standing under the APA? Because, as I said to start in addressing Your Honor's question, the Supreme Court and its two most recent pronouncements within the last three years have said, the key issue is what did Congress intend in the statute? Yeah, but under the APA, they don't look at just the APA, they look at the underlying statutory violation. The APA. I'm sorry, Your Honor. No, no, I get it. Thank you for not interrupting. Under the APA, they look at the underlying statutory violation to see whether it was for your interest or for your thing. Why isn't that same theory applicable here? Because if you look ... It is even better because the APA actually does create a cause of action, which 1491B does not. Well, if the court looks at Bennett v. Spears, which is one of the seminal cases on it, there were a couple of claims in that case. In dealing with the APA claim, the APA, of course, is exceptionally broad, says any citizen, not even a citizen, any person who's grieved by agency action can bring the cause of action. In Bennett v. Spears, as you correctly noted, they said, well, we'll look at the following provision. But in that same decision, the first cause of action they addressed was under the Endangered Species Act. And there, they said, no, we'll just look to the cause of action itself. We're not going to look at the subsequent provision. And they said the cause of action allowed anyone to bring ... No, I get it. Look, if we interpret 1491B as specifically creating a cause of action, I think you have a very good argument. But I don't think that's the argument you're making. Because I think it's very clear that the Supreme Court and this Court have repeatedly said that 1491B is just a jurisdictional provision. It doesn't create a cause of action. Well, then the question becomes, do you get a bid, a right to protest bids? The seminal source, aside from the contract, which was always in this Court, was Scandal, which said it was under the APA. The Court in the ... Right, and I don't disagree with you. I think that's right. It means that under the modern bid protest statute, you have the right to challenge a statute or regulation that you believe was violated or unfairly applied. But also under the modern APA jurisprudence, the Supreme Court has now told us to look at the specific statute being alleged as violated and determine whether you fall within the zone of interest. I don't understand why that evolution of standing doctrine for APA shouldn't carry over to the bid protest. Because the bid protest is much narrower than the APA. It's limited by its nature to only bidders and interested parties in bids or solicitations, which we clearly are. That's undisputed. But it's still an APA-like cause of action.  All other statutes deal with much narrower categories of litigants. I don't really understand how that makes any distinction. Because it would make a distinction if the cause of action was in 1491. But if it's not, then the fact that 1491 is limited to interested parties jurisdictionally doesn't do anything about looking at the cause of action and determining whether you have way over your time. I've got your answer. Mr. Kemp, please proceed. May it please the court. First of all, just to point out, Cleveland Assets actually conceded at oral argument on pages 16 and 17 of the record that they did not fall within the zone of interest when it comes to prudential standing.            Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. But this case I find very complicated. And part of it is the weird interplay between how big protests evolved and Scanwell and the ADRA and the like. Why isn't it at least for this case, even though 1491 generally isn't read as creating a cause of action, appropriate to read 1491B at least as both providing jurisdiction and creating a cause of action for interested parties? The simple answer is, Your Honor, is that this is an appropriation statute and nowhere in the statute in 3307. No, no, no. I'm not talking about 3307. I'm talking about 1491B. Why is it 1491B, if 1491B said we are creating a cause of action for people to challenge government procurement decisions, and the standard is any interested party may challenge any procurement regulation, then why isn't that enough to give standing for any interested party to challenge any procurement statute? Because, as Your Honor mentioned earlier, the Supreme Court precedence has evolved and there has been a versus sphere where the Supreme Court has said that there has to be a direct Well, maybe I'm being confusing. I'm trying to do the same thing that I did with your friend on the other side, but altered the language of the statute a little bit. And so the Congress just enacted 1491B because prior to my hypothetical world, protesters had no right to challenge a government decision in court, and they wanted to give them a right to challenge a decision in court. So they enacted 1491B that says we are now creating cause of action for protesters to challenge cases, and our cause of action is any interested party can challenge an application of procurement statute or regulation in the Court of Federal Claims. That creates a cause of action. It defines the parties that can sue, and it defines what they can sue over. If we read that statute that way, don't they have standing under that view of the statute? I understand that's not your view of the statute, but why wouldn't that be sufficient? I mean, there's the concept of just regular standing, where it's a prospective bidder and then also showing some form of prejudice, but here I would still argue that even 1491B, when you look at it, it says any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. But I don't see how that could possibly create a separate cause of action itself, because here the procurement is the Request for Lease Proposal, is the RLP, and that has nothing to do with 3307. And Cleveland Assets... I want to hear you say more about that argument, because so is your view that even if they could challenge statute or reg, and even if somehow 1491 created that right, that this isn't the kind of statute or reg that is covered by 1491, because this statute has absolutely nothing to do with procurement and is only an appropriation statute. It's only a tug-of-war between the executive and the legislative over the purse. It has absolutely nothing to do with procurement or proposed procurement. That's correct. And also, Your Honor, when it comes to the prospectus pursuant to 3307, it never actually says a prospectus has to be acted upon, even. And then it's also... I mean, that's really just part of the internal appropriations-making process. Did you make that argument below, that 3307 wasn't a procurement statute? We had argued that it was an appropriation statute, Your Honor. But the trial court didn't rely on that fact? The trial court actually, the trial court was correct in noting that here, at least, when it comes to that 3307, at least when it comes to prudential standing, and that's at page 18 of the record, that section 1491 is not intended to create private attorneys general to enforce laws of broad application. And that's what we have here, where this is 3307, again, it's for lease to appropriate funds for leases over $1.5 million, and that's certainly a lot of money and a lot of different parties that are involved when it comes to GSA leasing different buildings. But nowhere does it have anything to do with actually extending that, that any specific contractor... Well, because you could look at it this way, what if it kind of goes back to, there's nothing that requires, again, that requires GSA to actually act on a prospectus, and you could have a party saying, well, you've got a prospectus, and you haven't acted on it yet. You need to do that. So if you were to find that somehow Cleveland Assets has prudential standing with 3307, it would, as the court in VFW said, open Pandora's box to basically any protester could try and go after any statute that it wanted to have the government act in a certain way. And then, in addition... How about a situation where no prospectus at all was provided to Congress, and yet GSA went out, they went ahead, the government went ahead and entered into a contract without getting approval at all from Congress. Would a party then have a zone of interest under 3307? I mean, I think this, again, goes back to the separation of powers concept, even, where it's not a contractor's job or a potential big protester's job to chastise GSA, so to speak. Even though that contract might be illegal, or it might, in a situation like that, where this process wasn't followed at all. Well, and Your Honor, actually, there is a separate, so 3307 just gives the appropriations, but the actual authority to enter into leases doesn't come from 3307, and that comes from 40 U.S.C. 585, and so even in this instance, no, that wouldn't give a party prudential standing, so to speak, to challenge it under 3307, because that's just for the appropriations. Now, as to whether GSA illegally enters into a contract, that's a separate statute, which is not at issue in this case, at least. That's 585, if that answers your question. And then, if you'd like me to... Yes, I'm wondering, why are we talking so much about the zone of interest? Why isn't it the case that 1491 does, to the extent it expressly overrides it, expressly overrides it, a general concept of zone of interest, because it says, 1491 says, limited to interested parties, to a solicitation by the Federal Agency for Bids, right? And we know who interested parties are, right? So that's already a narrowing of those people who can be involved in a 1491 action. And then, any statute or reg, if it's going to be challenged, has to be in connection with that procurement or proposed procurement. Again, like a further narrowing of the universe of statutes that can be considered. So why isn't it fair to possibly say, Congress has expressly overrode a general prudential standing because they have articulated very narrow and precise requirements for standing under 1491? I kind of think that's your opposing counsel's argument. Maybe not exactly the way I said it, but he does say that he doesn't think there's a zone of interest applies. The rest may be my supplement. But in any event, why isn't that the case? It says, interested parties, and it says, only statutes related to the procurement. Why doesn't that solve the, even, I mean, it would resolve this case, quite frankly, because this is not a statute related to the procurement, and then we wouldn't even need to reach the zone of interest stuff. I mean, I don't understand. Why doesn't this statute articulate who can bring suit and under what precise set of circumstances such that some general zone of interest theory doesn't have to be looked to? Well, and Your Honor, the trial court did look at that and determined that 1491B did not actually expressly negate prudential standing, which the Supreme Court in Bennett v. Speer and Lexmark recently said it has to expressly negate. I understand the trial court looked at it and said it didn't. This is a case of statutory interpretation that I reviewed de novo, so it's not very helpful to me. My question to you is, why shouldn't I read it that way? Because when looking at 1491, any alleged violation of statute or regulation in connection with a procurement or a proposed procurement, I still think that there has to be, even if there is, there has to be some, not just tangential connection, which is what we have here where it's so far beyond, not even related whatsoever really, because it's an appropriation statute versus giving any actual authority to the attorney. Yeah, but now you're arguing, see, now you're arguing whether the statute is a procurement statute or not, not whether they had standing to challenge it if it is a procurement statute. They're clearly tied up together. I mean, whether it's, whether they're within, if it was a procurement statute intended to be applicable to bidders, then it would be within the zone of interest. I think Judge Hughes just kind of crystallized for me the point in my mind, which is, why isn't, aren't these two completely overlapping circles, right? Whether zone of interest requires it has to be a statute for, kind of for your benefit or that we, Congress, intended you to be able to sue under. This statute says only interested parties and statutes related to the procurement. I can't think of a statute related expressly, connected expressly to procurement that wouldn't be within the zone of interest. Do you follow me? It's hard for me to imagine how those two circles aren't completely overlapping. And then if that's true, why do we need to go to the more amorphous body of law of zone of interest if the statute on its face very clearly articulates the circumstances? Well, I think, Your Honor, that this is probably a very rare occurrence for even this issue to come up with prudential standing since it's an appropriation statute. Wouldn't it almost be a null set? I mean, you argue that this isn't a procurement statute, right? I don't know that you've made that clearly enough, but I don't know that you've waived it. I mean, you've made it through the zone of interest argument, but if you just argued setting aside standing, this is not a procurement statute, and we agreed with you, then that ends the case, doesn't it? Why isn't that almost the same inquiry as zone of interest, which is procurement statutes are ones that are intended to protect bidders largely. I mean, sometimes they set rules under which the agencies have to do procurement, but at least implicitly, that protects bidders, whereas this is, as you say, a separation of power statute and an appropriation statute. So if it's not a procurement statute, then it can't be within the zone of interest. I would agree with Your Honor, and then also just to point out too, the other major issue in the case is obviously the reasonableness of the rent cap, and again, the trial court did find that Cleveland Assets did have standing to challenge the reasonableness of the rent cap, but also correctly found that throughout, and this is at pages 17 and 18. You realize he didn't address that in his opening, but you've now addressed it, so now he gets to address it. So go ahead and keep going, but you might want to think about that in the future. Your Honor, just to sum up though, there are many places in the record that do support their reasonable rent rate, which occurs at 1515 and 1553 of the record in 2010, as well as the market survey in 2016, which is at 1046 through 49 of the record, and in addition, there were also market surveys in 2017 that also supported the rental rate. And again, if there are additional questions about whether there was a rational basis, the trial court did find that throughout the whole process, GSA had actually reasonably determined that the rental rate was rational in this market. Okay, please, thank you very much. Thank you. We'll restore two minutes of rebuttal time, or Mr., yeah, please restore two minutes of rebuttal time for Mr. Gordon. I would point the court on the 1491 to the provision in B4 where it says, in any action under this subsection, the court shall review the agency's decision pursuant to the standard set forth in Section 706 of Title V. That specifies a standard of review. That is going beyond just a provision of jurisdiction. But that's the APA. It's incorporating that by reference, but 1491 is calling that out. And you conceded that the modern-day standing jurisprudence applies to the APA, so doesn't that just create even more? No, because for the reasons that Judge Moore articulated, that it specifies who has standing. It specifies very specifically people involved in a protest that are challenging any alleged violation of statute or regulation in connection with the procurement. I get that, but I mean, I know you're aware of this precedent that says the Tucker Act is just jurisdictional. It doesn't create causes of actions. So I don't know that they specifically addressed before, but we would have to find that this one specific subset of the Tucker Act is indeed both jurisdictional and cause of action. I would agree with that, Your Honor. I agree with that. Now, I want to turn, unless the court has further questions, I want to turn briefly to this issue about the $26 rent cap. No, I don't want to hear about that. I want to hear at least one thing about whether if we agree that this isn't a procurement statute, then it doesn't really matter whether we resolve this on standing or the like. You can't sue under 1491B even if you have a cause of action because it's not a procurement statute. Well, it says that it has to be in connection with the procurement. Any statute in connection with the procurement, Your Honor. And I would submit that that goes to the merits rather than standing. We lost on standing. We could lose. We can yet lose on this claim. I'm not suggesting that we can't. No, this is still a standing question because if what you're raising is a claim that can't possibly fall under 1491 because it's not the alleged violation has nothing to do with procurement. Fair enough. Fair enough. But that's a very capacious standard and the Supreme Court in its most recent decision, the Bank of America said in construing these provisions, it's arguably within the zone of interest. So, at this point, it seems to me the benefit of the doubt was. You're using the word zone of interest. Tell me how an appropriation statute which has nothing to do with procurements in particular is nonetheless in connection with the procurement statute. And if that's true, then heck, the entire appropriation bill is now fair game. No, Your Honor. For every appropriation. I understand your parade of horribles argument, but this particular statute is tied specifically to procurements. Procurements of lease space. And it says that if you're going to lease space, it's going to cost more than 2.85 million per year. You've got to come up to Congress and get advanced approval. So it's tied. That happens in every aspect of the appropriations process. If the DOD wants to go out and acquire a major new defense system, they don't just ask for a big lumps. They don't ask for $20 billion and say, let us spend it how we want to. They ask for a specific line item and say, we want to spend $20 billion or $1 billion on a whole new line of aircraft carriers. And if Congress had a statute that says you can only do this if you meet these criteria, then you could challenge that too under your theory. You have standing. Yes. If you could show a prejudicial violation, because, and I'll go back to CACI, because the court made the point there, that the bidders are the ones that are the ones feeling the pinch and they're the ones that are going to object to the violations of law. So in effect, the bidders are akin to, if you will, private attorney generals. Okay. Our time is up for today. I thank both counsel for their argument. The case is taken under submission.